We'll hear argument next in the case of Aguilar v. Gaston-Camara. Mr. Daugherty. Thank you, Your Honor. Good morning. May it please the court, counsel. My name is Larry Daugherty. There is no dispute Mr. Aguilar was entitled to a hearing. He did not get one. Although he was on parole, the defendant is misclassified. The question I have... Go ahead, Judge Rovner. You've got the more problematic connection here. No, no, no. Well, you know, I mean... It seems to me, regarding a hearing and the availability, you know, of post-deprivation process, that Mr. Aguilar would be able to correct the problem with the calculation of the dates by sending an email. I mean, correspondence by mail or email was an option to contest the misclassification. If you take a look at Tony L. v. Franzen, which is a Seventh Circuit case, the ability to challenge through correspondence can be adequate under the Due Process Clause, at least for easily ascertainable errors such as this one. In other words, what I'm saying is a hearing wasn't an absolute necessity here. Your Honor, the hearing was an absolute necessity under Wisconsin law because Mr. Aguilar was entitled to it. The Tony L. v. Franzen case was later disapproved by the Supreme Court for the limited proposition that an inmate can make an appeal to the same defendants who affected the deprivation. That's problematic. That would have been precatory. That would not have been a substitute for the pre-revocation parole hearing before a hearing officer to which Mr. Aguilar was entitled under Wisconsin law.  This is a federal claim. We can't enforce state law. So why was entitlement to a hearing under state law of any moment? The court is not being asked to enforce state law. The court is being asked to accord the federal process that's due when state law vests a liberty interest. But state law giving someone process counts for zero in these cases. That's the holding of the Supreme Court in Olam v. Wakinkona. So one gets nothing out of state law. My particular question for you is what did your client lose? He got full credit for these 90 days when his parole was revoked following plenty of process. So I can't see what, basically, what was your client's loss? Your reply brief says, well, what he lost is process. And Olam says, and I'm just quoting the Supreme Court, process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement, close quote. And the problem I have with your position is that since your client got day-for-day credit for the 90 days, he doesn't seem to have lost a substantive interest. Yes, Your Honor. The number of days in jail is not the sole measure of harm. Mr. Aguilar seeks expungement of an illegal record as a practical- But he got full credit for the 90 days. Your Honor, he seeks expungement of the illegal sentence from his record. I don't think that's something that is covered by federal law. As a matter of basic fairness, Your Honor, the hearing here would have been the vehicle to test the claims for the unsubstantiated information from the Racine Police Department that was the basis for the detention. That sounds like an argument that you just get process for the sake of process. Suppose the state had said, your release is revoked and we're not doing anything. We think you violated the terms, we're doing nothing. And they write that down. Would that violate the federal constitution? If he had an entitlement to a hearing, Your Honor, yes it would. I think you're right smack up against Olin, against Watkin, and Hewitt against Helms, decided the same term. What the Supreme Court said in Kerry v. Fyfus, Your Honor, is that due process, the right to due process is absolute. That's why harm, that's why there can be nominal damages, that's why a showing of harm is not required. The focus on, well, he got no more days as a result, is the wrong focus. It's not called due result, it's called due process. We are not entitled to reject holdings of the Supreme Court like the holding in Olin. I understand, Your Honor. As a practical matter of fairness, the defendants originally were going to release Mr. Aguilar. Then came the phone call from the Racine Police Department threatening new charges, accusing Mr. Aguilar of using marijuana. He denied the new charges. He took and passed a drug test at the jail the next day. The police never filed the new charges. Nevertheless, the phone call from the police department was reason enough for the defendants to change their position and decide to impose a 90-day extended supervision sanction on him that under Wisconsin law he was not eligible to serve. In so doing, they recklessly disregarded six indications in their own records that he was on parole. The defendant's answer, no harm, no foul, is not an answer to a due process violation, and there's no burden on Mr. Aguilar to show in a hypothetical what he might have argued or what alternative result might have come as a result of the hearing. It's always a harm, it's always a foul. The right to due process is absolute with respect to the citation. It sounds like you're just filing a belated petition for rehearing in Olam. What you're saying is almost exactly what the Ninth Circuit said and what the Supreme Court reversed. The second point, Your Honor, is that the district court failed to give fair and meaningful consideration to the claims of a pro se plaintiff. They ended his case on a limited, discreet, easy-to-fix problem, a hearsay problem. The fix would not have prejudiced the defendants. Mr. Aguilar's declaration has a half-page description of his attorney's conversation with Defendant Harris. In it, the attorney told Defendant Harris, my client's on parole, you've detained him on an illegal sentence, you need to release him. Defendant Harris's response was, we're lucky, he's lucky that we did not revoke him. The district court wrongly decided that that was the only evidence of defendant's mental state in the record. The district court should have told Mr. Aguilar, you have 30 days to get this information in a declaration from your attorney. You have to get this information into a form that the court can consider. You see, here's the problem. I will tell you this. Had I been the district court, I would have given him the opportunity to obtain that affidavit. But I was not the district court. And that also being said, even if the affidavit had been provided and it had mirrored Mr. Aguilar's characterization of the communication, the evidence does not, in my view, establish that the defendants acted with deliberate indifference. There's no evidence that any communications between Saldana and Harris was ever communicated to the other defendants. And there does not seem to be any evidence that Saldana directly informed any of the other defendants of the misclassification. So, it would seem that there is no evidence that those defendants were actually aware that he had been misclassified. And their conduct, at best, could be characterized as negligent, not deliberately indifferent. Well, Your Honor, the record shows that the attorney contacted Defendant Yates, who was in the line of command the day after he spoke to Defendant Harris. We don't have the account of that conversation. That's the point of having the attorney give the whole conversation himself. The district court erred by concluding this was the only evidence of defendant mental state. Again, Mr. Aguilar raised the fact that a reasonable inference could be drawn that defendants were reckless or deliberately indifferent by failing to observe and act on the six correct indications in their own records that he was on parole. So, there was adequate mental evidence for the due process claim, even without the attorney's testimony. I'm in my rebuttal time. Oh, boy. I'm sorry. No, no, no. Go ahead. Unless the court has a follow-up, I'll reserve the rest of my time. Certainly, counsel. Thank you. Mr. Johnson-Karp. Thank you, Your Honors. May it please the court, Assistant Attorney General Gabe Johnson-Karp for appellees. Your Honors, this appeal can be resolved very easily and straightforwardly on the basis that there is nothing in the record to suggest that anything that any of the defendants here did rose to the level above negligence. The record suggests that none of the defendants who were responsible for Mr. Aguilar's supervision were aware of the mistake that they made, and on that basis, it simply doesn't rise to the level of a constitutional violation. Well, you know, Mr. Aguilar's affidavit states that Mr. Saldana attempted to reach some of the defendants by phone and was essentially directed to Harris. If we consider that evidence that Saldana was directed to Harris when attempting to reach the other defendants, does that create an issue of fact as to whether Harris shared responsibility for the other defendants' jobs and therefore was deliberately indifferent in failing to convey to them the information that Mr. Aguilar had been misclassified? Your Honor, I don't think the fact that Attorney Saldana was directed to Defendant Harris creates the type of bureaucratic responsibility that would require Ms. Harris to take any action. First of all, it's not clear from the record how Attorney Saldana was directed to Ms. Harris, but separate from how he got there, the mere fact that he spoke with her does not create a responsibility for her to take some action that isn't otherwise within her responsibilities. We cited Berks v. Ramish in our brief for the proposition that merely informing somebody in the bureaucratic chain does not create a constitutional responsibility to act, and so it is with Ms. Harris here. She, in her declaration, stated that she had no responsibility for Mr. Aguilar's supervision, and likewise, she had no responsibility to inform the defendants, I should say the other defendants, Ms. Gaston Camara, Ms. Haysig, and Ms. Yates, about this information. And because there's nothing in the record to suggest that they had that information, what we have in the record is a mistake, a human error that they misperceived his classification, and on that basis, the most that can be said about their conduct is that they were negligent. I'd like to address Mr. Aguilar's assertion that the district court abused its discretion or otherwise erred by not giving Mr. Aguilar another opportunity to address the hearsay in his declaration. Mr. Aguilar points to Rule 56E on this point and suggests that because the court did not take the option of giving Mr. Aguilar another opportunity, that the court abused its discretion and that reversal is required on that basis. Rule 56E doesn't impose any mandatory obligations such that the district court could have abused its discretion on that basis. And rather, the actions that were taken before the district court complied precisely with this court's instructions in Tims v. Frank and Lewis v. Faulkner, which instructions are now codified in the Eastern District of Wisconsin local rule, which instructs parties adverse to pro se litigants to warn them about what might happen, what will happen if they fail to respond to facts on summary judgment. There's no question that that procedure was complied with here, and the district court, therefore, was within its discretion to grant summary judgment when the most that Mr. Aguilar could muster were hearsay and double hearsay statements in support or to challenge summary judgment. Well, look, where relevant evidence is presented in proper form but can be easily obtained in the proper affidavit form, shouldn't a district court at least provide the pro se litigant with that opportunity before ruling on the summary judgment motion? Otherwise, aren't the rules of evidence simply a snare for pro se litigants and a boon for defendants? Your Honor, I would say that this situation demonstrates that the rules were not a snare for Mr. Aguilar. Mr. Aguilar demonstrated a recognition of what was required of him and simply wasn't able to muster the facts. I think the important point here, sort of putting aside the propriety of what the district court might have or should have done, at the end of the day, even if this court were to look at the substance of the declaration, as Your Honor indicated, it really doesn't support liability as to Harris and certainly not as to any of the three defendants responsible for Mr. Aguilar's supervision. The statements are that Attorney Saldana told Harris that Aguilar was on supervision and she said, he's lucky we didn't revoke. That doesn't change her responsibility over him as we discussed previously. There's nothing in the affidavit that suggests that Attorney Saldana informed the other three defendants of this error in Mr. Aguilar's classification. So on the issue of the declaration, I think it's clear that the district court did not abuse its discretion, whether that was based on the rules of hearsay and procedure or if the court would even peek behind to the substance. Turning then to the substantive claims at issue here, which I would again underscore that the court need not address those claims if the court concludes that the conduct here is negligent. It bears pointing out that the harm that Mr. Aguilar discusses on appeal is at times different than the harm on which he based his complaint and that was argued before the district court. In the district court, it was relatively clear that what we were talking about was confinement as the harm. And here, as the court has recognized, the harm that he discusses is the harm of being misclassified. And the point there is that these are two separate inquiries for each of the substantive claims, the Eighth Amendment claim and the due process claim. If we're talking about the harm of being detained in the Eighth Amendment context, it's clear that that harm has a legitimate penological purpose. Detaining Mr. Aguilar as a result of his rule violations simply doesn't rise to the level of constitutionally impermissible punishment under the Eighth Amendment. Conversely, if the harm is being misclassified, then we're sort of at the other end of the spectrum that it's just not a sufficiently serious harm to trigger Eighth Amendment protections. So regardless of how the harm is classified, I think Mr. Aguilar's Eighth Amendment claim fails on that objective prong. Similarly, on the subjective prong, he also fails to show that the defendant's conduct here rose above negligence. He points to multiple instances in the record where there was the case citation or the case notation on the paperwork, but that doesn't say anything about the state of mind of the defendants here, and certainly doesn't rise to the level of the blatant disregard of a substantial risk of harm that the Eighth Amendment contemplates. Turning finally to the due process violation, again, there's potential different inquiry depending on how the harm is categorized, but as we addressed in our brief, at the end of the day, the existence of state law remedies is what demonstrates that there is no procedural due process violation. Mr. Aguilar had available to him state law certiorari review, tort remedies, and depending on how the harm is classified, administrative remedies. So by the existence of those remedies, due process is satisfied, and Mr. Aguilar is unable to establish that due process claim. Unless the court has any further questions, we would ask that this court affirm the district court's decision. Thank you, counsel. Anything further, Mr. Doherty? Yes, Your Honor. The rules of evidence operated absolutely as a snare on Mr. Aguilar. This court's en banc decision 10 years ago in Pruitt v. Moat, Judge Sykes wrote, most pro se plaintiffs are unfamiliar with application of the rules of evidence. In that case, this court overturned the district court for an abuse of discretion for failing to appoint counsel for a pro se litigant with a 6th grade education. In Palmer v. Decatur, this court overturned the district court for an abuse of discretion for a rejection of a case for one missed deadline by the plaintiff. This court faulted the district court for doing so without warning. It used the word overkill, and that is what happened here. There was no warning to Mr. Aguilar that he was about to lose his case because of a discreet hearsay violation. Defendants referred to another opportunity to get the affidavit. That's misleading to the extent that it implies he knew he had a hearsay problem. He did not know he had a hearsay problem, and that is the problem with pro se litigants. They are competent until they're not competent. Everyone is different. As Judge Rovner indicated through her question, another court would have given an opportunity. It's a discreet, low-cost, 30-day fix, no prejudice to the defendant. Let this person get a complete account from the primary interlocutor, the attorney, about his conversation with all the defendants, not just Defendant Harris. Defendants recklessly disregarded six indications in their own written records that he was on parole. The parole officer wrote correctly four times that he was on parole, and she didn't even pay attention to those. Affirming here creates the rule that nobody has to be responsible for the entries in their records and that supervisors may robo-sign forms without even having to call out their subordinates for obvious mistakes. Again, overkill was the word that this court used in the Palmer case. Complete rejection of the claims with prejudice on summary judgment without warning. All the district court had to do was issue a notice to Mr. Aguilar, you have 30 days to get a declaration from your attorney. Put this information in a form that the court may consider. In terms of mental state evidence, Mr. Aguilar also put into issue the inferences that defendants should have drawn from the records that they were recklessly misclassifying him. With respect to the governing principle in the district court, it's not the may in Rule 56. 56E is a toolbox of orders that the district court can use to craft relief. The guiding principle to the district court is the Palmer v. Decatur case. District courts must provide fair and meaningful consideration to the claims of a pro se plaintiff, and that didn't happen here. This court has had no difficulty reversing district courts for abuse of discretion, for failure to correct a discreet legal problem that blocks a consideration of the claims on the merits. Thank you very much. Mr. Dougherty, the court appreciates your willingness and that of your law firm to accept the appointment in this case and your assistance to the court as well as to your client. Thank you. The case is taken under advisement.